UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SICILIANO JR.,<br><br>       Plaintiff,<br> – against –<br><br>IMPERIAL BAG AND PAPER CO. LLC D/B/A IMPERIAL DADE, and BCPE EMPIRE NEW TOPCO, INC.<br>       Defendants. | Case No. 6:25-cv-06307-EAW |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE SEEKING A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

*Vivek J. Thiagarajan, Esq.*

*Attorney for Plaintiff*

*1088 Bay Road, Webster, NY 14580*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………………………..(1)

**STATEMENT OF FACTS**……………………………………………………………….(1)

**STANDARD OF REVIEW**………………………………………………………………..(2)

**ARGUMENT: PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND OTHER INJUNCTIVE RELIEF**…………………………………………………....(3)

I. **Plaintiff Is Likely To Succeed On The Merits Of His Claim As The Restrictive Covenants Are Unenforceable**……………………………………………………......(3)

    a. The Restrictive Covenants Are Explicitly Premised on Continued Employment………………………………………………………...……..…(4)

    b. Defendant Has Rendered The Restrictive Covenants Unenforceable By Breaching The Agreement……………………………………………………(6)

    c. The Restrictive Covenants Are Unenforceable As They Unreasonably Restrict Plaintiff's Livelihood……………………………………………………..(7)

II. **Plaintiff Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted**……………………………………………………………..(8)

III. **The Balance Of Equities Favors Plaintiff**……………………………………....(8)

IV. **The Public Interest is Against Enforcement of the Restrictive Covenants**………....(10)

**CONCLUSION**………………………………………………………………..(11)

# PRELIMINARY STATEMENT

Plaintiff, John Siciliano ("Plaintiff") respectfully submits this order to show cause pursuant to the Federal Rules of Civil Procedure ("FRCP"), Article 65, seeking immediate injunctive relief against Defendants, Imperial Bag and Paper Co. LLC ("Defendant Imperial Dade") and BCPE Empire New Topco, Inc. ("Defendant BCPE")(collectively "Defendants") who are maliciously preventing Plaintiff from earning a living while simultaneously denying him his contractual severance rights, unlawfully retaining his valuable personal property, and engaging in a campaign of defamation against him. Additionally, the actions of the Defendants put Plaintiff at risk of being unable to pay his Court-ordered child support, which is memorialized in a temporary child support order in his ongoing matrimonial proceeding.

These grievances collectively form an impossible situation in which the Plaintiff cannot find meaningful work, cannot have access to severance or the value of his personal property to mitigate the effects of this lack of income and insurability, and additionally is at risk of serious reputational harm caused by the Defendants' disparaging conduct. Defendants have disrupted the status quo to such an extreme extent that without immediate Court intervention, including pursuant to Rule 65(b)(1), Plaintiff will be unable to support himself or provide for his family's needs at all.

As is set forth below in detail, Plaintiff respectfully requests that a temporary restraining order and preliminary injunction be issued against Defendants to prevent further unlawful actions which will—in the absence of judicial intervention—continue to harm and prejudice the Plaintiff.

# STATEMENT OF FACTS

The relevant facts supporting Plaintiff's application are set forth in detail in Declaration of the Plaintiff filed herewith (the "Plaintiff's Declaration") and the exhibits appended thereto, which are incorporated by reference herein.

1

## STANDARD OF REVIEW

A preliminary injunction may be issued on notice. See FRCP, Rule 65(a)(1). A court may grant a preliminary injunction if the movant establishes each of the four factors, namely irreparable harm, a likelihood of success on the merits, balancing of the equities, and consideration of the public interest. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008).

Regarding the Temporary Restraining Order, "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." See FRCP, Rule 65(b)(1)(a-b).

New York Law controls here. The Employment Agreement explicitly provides that New York law governs this dispute. See Section 14(c) of the Employment Agreement dated May 15, 2024 (the "Employment Agreement"), which Defendants drafted and cannot now dispute. In such a case, New York Law should apply and be construed by this Circuit Court. See Ivy Mar Co. v. C.R. Seasons Ltd., 1995, E.D.N.Y., 907 F. Supp. 547 (Where an employment agreement based in New York contained a noncompete, the Federal Court held that "It is undisputed that New York law applies to the instant action" and the Court construed New York State Precedent in making its holding).

As is more fully expressed below, Plaintiff has been and will be irreparably harmed, is likely to succeed on the merits of his claims, has the equity squarely balanced in his favor as the terminated employee, and has public interest on his side. Furthermore, Plaintiff will suffer immediate and

irreparable injury and numerous efforts were made to give notice and the reasons why notice should not be required here. As such, Plaintiff is entitled to a preliminary injunction and immediate temporary restraining order as follows:

A. A. Restraining, enjoining, and prohibiting Defendants from enforcing the restrictive covenants contained in Section 9 (titled "Restrictive Covenants") of the Employment Agreement dated May 15, 2024 between Plaintiff and Defendant Imperial Dade (the "Purported Employment Agreement"), including but not being limited to Section 9(b)(the "Covenant Not to Compete"), Section 9(c)(the "Covenant Not to Solicit, accept, or divert Customers"), and Section 9(d)(the "Covenant Not to Solicit Employees").

B. Compelling Defendants to remit and return all personal property materials belonging to Plaintiff, including but not limited to electronic devices, files, documents, and personal effects in its possession or control or in the possession and control of its employees, officers, agents, or representatives, including such items as were on the premises located at 1281 Mount Read Boulevard, Rochester, NY 14604 (the "Office"), whether in Plaintiff's desk, in his office, or elsewhere at the Office;

C. Restraining Defendants from disparaging and spreading false rumors about Plaintiff which have and will continue to harm his reputation; and

D. Granting such other and further relief as this Court deems just and proper.

## ARGUMENT

## PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND OTHER INJUNCTIVE RELIEF.

I. **Plaintiff Is Likely To Succeed On The Merits Of His Claim As The Restrictive Covenants Are Unenforceable.**

In the context of a motion for a preliminary injunction, under New York Law, it is not incumbent upon a court considering the likelihood of success on the merits to fully and finally determine the merits of an action. See Time Square Books v. City of Rochester, 223 AD2d 270, *278 (4th Dept. 1996). Instead, it is enough if the moving party makes a prima facie showing of its right to relief while the actual proving of its case should be left to the full hearing on the merits. Id. (citing Tucker v. Toia, 54 AD2d 322, *326 (4th Dept. 1976)) (citations omitted). Under Federal Law, "it need only be shown that the probability of the movant prevailing is better than fifty percent." See

Ivy Mar Co. v. C.R. Seasons Ltd., 1995, E.D.N.Y., 907 F. Supp. 547, citing to Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985).

Plaintiff has demonstrated a likelihood of success on the merits greater than fifty percent with respect to his claims regarding the restrictive covenants, as he has made—by this filing and previous filings—the requisite showing that such covenants are unenforceable and will unreasonably and irreparably harm him. Under New York Law, restrictive covenants are only enforceable where they are (1) necessary to protect a company's legitimate business interest, (2) reasonable in time and area and not unreasonably burdensome to the individual, and (3) not harmful to the public. See BDO Seidman v. Hirshberg, 93 NY2d 382, *389 (1999); Reed, Roberts Assoc., Inc. v. Strauman, 40 NY2d 303, *307-308 (1976); Riedman Corp. v. Gallager, 48 AD3d 1188, *1189 (4th Dept. 2008). Further, "no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment." Reed, Roberts Assocs., Inc. v. Strauman, 40 N.Y.2d 303, 307, 386 NYS.2d 677, 680, 353 N.E.2d 590, 593 (1976). *(citing* Restatement, Agency 2d § 396 comment B).

### A. *The Restrictive Covenants Are Explicitly Premised on Continued Employment.*

The restrictive covenant at issue here is contained in Section 9(b) of the employment agreement between the parties dated signed May 14, 2024 and dated May 15, 2024 (the "Employment Agreement"). As a primary concern, the restrictive covenants are specifically premised on "the promises set forth in this Agreement" and are conditioned on such promises. In fact, the Employment Agreement specifically premises the entirety of Section 9 on Plaintiff's continued employment, stating under Section 9(a) that Consideration for the restrictive covenants are first and foremost premised on "Employee's employment and continued employment with the Company" as the primary consideration for such restrictive covenants. Despite this explicit

4

contractual language, in-house counsel represented to the Plaintiff that the obligations were "ongoing" (see Exhibit C of the Complaint) which is a misrepresentation of the contract language.

Construing New York Law, in <u>Greenfield v. Philles Records</u>, 98 NY2d 562, *569-570 (2002), the Court of Appeals unequivocally states that the explicit language of a contract—which here states that the restrictive covenants are conditioned upon continued employment—controls. Specifically, the Court of Appeals held that, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." As such, the contract should be read to state that the restrictive covenants cannot be enforced post-termination, despite Defendant's misleading statements to the contrary.

New York Law mandates this reading of the statute as well. Both the Court of Appeals and the Fourth Department strongly disfavor employers—like Defendant has attempted to do herein—from terminating an employee and then seeking to enforce restrictive covenants such as this, even where the language in the noncompete allows it (which is not the case here). See <u>Columbia Ribbon & Manufacturing Co., Inc. v. A-1-a Corporation, Et Al.</u>, 42 NY2d 496, *499 (1977)("restrictive covenants which tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored by the law."); *See Also* <u>Briskin v. All Seasons Servs., Inc.</u>, 206 AD 2d 906 (4th Dept. 1994)("It is well established that restrictive covenants that tend to prevent an employee from pursuing a similar vocation upon termination or retirement from employment are disfavored by the law").

Therefore, even if the terms of the restrictive covenants sought to be enforced upon Plaintiff allowed for post-termination enforcement (which they do not), New York Law would disallow such enforcement.

5

### B. *Defendant Has Rendered The Restrictive Covenants Unenforceable By Breaching The Agreement.*

In addition to being unenforceable as they are now absent the key piece of consideration (Plaintiff's continued employment), Defendant has also rendered such covenants unenforceable by breaching the agreement in which they are contained. The restrictive covenants states that:

> "In exchange for and ancillary to the promises set forth in this Agreement, Employee agrees that, during Employee's employment and for a period of twelve (12) months after Employee ceases to be employed by the Company for any reason, whether voluntary or involuntary, Employee shall not, directly or indirectly, whether as a principal, director, employee, agent, distributor, representative, equityholder, or otherwise, participate in, work for, or provide services to any position or role with a Competing Business (as defined below) in the Restricted Area (as defined below) that would involve services, or the supervision of services, that are similar in function or purpose to those Employee performed on behalf of the Company Group during the Look Back Period (as defined below)."

Defendant has breached and broken such promises, rendering this noncompete unenforceable and ineffective, while expecting Plaintiff to honor those obligations that required consideration. Specifically, Defendant has failed to provide any of the Plaintiff's contractual rights regarding his termination, including his severance and his unpaid vacation time. As such, the restrictive covenants are now unenforceable.

As discussed above, Defendant breached of the Employment Agreement since May 21, 2025, the date on which it fired Plaintiff, and Defendant has committed numerous additional breaches thereafter. Because Defendant breached the Employment Agreement, the restrictive covenants are unenforceable as a matter of law. Under New York Law, "one who breaches a contract containing a restrictive covenant cannot later enforce the covenant." See Loughlin v Meghji, 186 AD3d 1633, *1660 (2d Dept 2020); DeCapua v Dine-A-Mate, Inc., 292 AD2d 489, *491 (2d Dept 2002)("When a party benefiting from a restrictive covenant in a contract breaches that contract, the covenant is not

valid and enforceable against the other party because the benefiting party was responsible for the breach.").

Here, the documentary evidence shows that Defendant has breached the agreement between the parties which contains the restrictive covenants attempted to be enforced, and as such, Plaintiff has shown a likelihood of success in terms of rendering the noncompete unenforceable.

C. *The Restrictive Covenants Are Unenforceable As They Unreasonably Restrict Plaintiff's Livelihood.*

On its substance, the restrictive covenants also prevent the Plaintiff from accessing employment in an unreasonably broad spectrum of industries, including—according to their own website, "grocery, food service, healthcare, hospitality, government, education, sports and entertainment, facilities maintenance, industrial packaging, export distribution, redistribution, cruise lines, and marine fields. See https://www.imperialdade.com/markets/all. The restrictive covenants also preclude Plaintiff from finding any allowable employment—whatever miniscule number of jobs would fit such category—within 100 miles of the worksite, which is an unreasonably large area that includes Syracuse, Buffalo, Ithaca, and even Toronto, Canada. This is especially unreasonable for the Plaintiff who is currently in the midst of a divorce and cannot legally move away from his children at this time, one of whom has special needs and requires extra care.

Lastly, Plaintiff is likely to succeed on the merits of his claim regarding his converted property. Such property was in his desk. Defendant did not allow him to clean out his desk. Defendant and its agents instead cleaned out his desk and retained possession of the property, specifically the Ledger. The collective injustice of the above issues warrants injunctive relief and is likely to succeed on its merits, both separately and as a whole.

## II. Plaintiff Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted.

Irreparable harm exists where the movant demonstrates that the injury to be suffered is more immediate and apparent than any perceived harm caused to the defendant through the imposition of an injunction. See Metropolitan Package Store Ass'n v. Koch, 80 AD2d 940, *941 (3d Dept. 1981)(citing Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp., 70 AD2d 1021 (3d Dept. 1979)). Irreparable harm exists if money damages are insufficient to make the movant whole. McLaughlin, Pivin & Vogel, Inc. v. W.J. Nolan & Co., 114 AD2d 165 (2d Dept. 1986).

Here, the damage and harm could not be more readily apparent. As is expressed more fully in the affirmation of the Plaintiff filed herewith—and in the Complaint—Plaintiff has no ability to earn an income, provide health insurance for his family, fulfill his child support obligations, or pay his bills. Compounding this inability to make a living is the Defendant's refusal to pay Plaintiff any of his severance benefits and relying on false, vague accusations of misconduct in an attempt to circumvent their contractual obligations. This is particularly egregious given that the information was provided under an express guarantee of non-retaliation.

In the attempted enforcement of the restrictive covenants and the conversion of Plaintiff's property all—both collectively and individually—have and will continue to irreparably harm the Plaintiff if action is not taken. This includes his salary which, when calculated on a daily pro rata basis, amounts to approximately $900.00 per day in direct monetary damages, in addition to the incalculable damage to his career prospects and professional relationships.

## III. The Balance Of Equities Favors Plaintiff

For purposes of determining the balancing of the equities, it is generally found that where the injury to be suffered by the movant is more substantial than any harm upon the non-movant in granting the injunction, the balance shifts decisively in favor of the movant. See Vanderminden v.

Vanderminden, 226 AD2d 1037, *1042 (3d Dept. 1996). Here, Plaintiff is a recently terminated employee who has no access to work, no access to healthcare, no severance to assist in the transition and—on top of all of this—has had his property wrongly converted. Defendant is a company that has been in successful operation under the name of "Imperial Dade" since the 1930's which can allege no plausible harm to the Plaintiff simply by returning his personal property and allowing him to work.

Separately, Defendant's conduct here should be factored into this balancing act. Specifically, "In balancing the equities, the court should consider various factors, including the interests of the general public, whether plaintiff was guilty of unreasonable delay, and whether plaintiff has unclean hands." See United for Peace and Justice v Bloomberg, 5 Misc 3d 845, *849 Sup Ct, NY County 2004).The interests of the general public are not served by allowing a company to trump up false and unsubstantiated misconduct in order to avoid contractual severance obligations, then—in tandem with these contractual breaches and bad faith allegations—prevent the employee from doing work in his skill set and field within a range of 100 miles, effectively requiring him to move from his home, which Plaintiff cannot currently do. These actions by the Defendant should be enjoined at all costs, lest this become a template for business to cut off employee's rights with impunity, simply because the contract contained a noncompete.

Based on the foregoing, a balance of the equities favors granting the injunctive relief requested by Plaintiff.

## IV. The Public Interest is Against Enforcement of the Restrictive Covenants.

In New York, it is well-established law that broad restrictive covenants are against public policy. See Brown & Brown, Inc. v. Johnson, 2014, N.Y. App. Div., 980 N.Y.S.2d 631, which holds that "in New York, agreements that restrict an employee from competing with his or her employer upon termination of employment are judicially disfavored because " 'powerful considerations of public policy ... militate against sanctioning the loss of a [person's] livelihood." Id., citing to Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353 N.E.2d 590,rearg. denied40 N.Y.2d 918, 389 N.Y.S.2d 1027, 357 N.E.2d 1033, quoting Purchasing Assoc. v. Weitz, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 196 N.E.2d 245,rearg. denied14 N.Y.2d 584, 248 N.Y.S.2d 1027, 198 N.E.2d 270; see Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp., 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4; D & W Diesel v. McIntosh, 307 A.D.2d 750, 750, 762 N.Y.S.2d 851)."

Here, the Employment Agreement attempts to restrict Plaintiff from finding employment in his field, or any job even closely related to his field within 100 miles of the prior jobsite. See Exhibit A, Section 9(b)(ii). This makes it nearly impossible for him to find meaningful work without moving, which he is legally constrained from doing due to court orders in an ongoing matrimonial proceeding, thus making the restrictive covenant particularly oppressive and unreasonable under these circumstances. Based on the representations of Imperial Dade in his email, Plaintiff is not allowed to get a job in nearly any industry, as Imperial Dade services nearly every type of industry under the sun, including grocery, food service, healthcare, hospitality, government, education, sports and entertainment, facilities maintenance, industrial packaging, export distribution, redistribution, cruise lines, and marine fields, among others.

As such, under New York Law, it is against public interest to allow the enforcement of such an agreement.

# **CONCLUSION**

Considering the foregoing, this Court should grant the Plaintiff's requests for preliminary injunctive relief as follows:

A. Restraining, enjoining, and prohibiting Defendant from enforcing the restrictive covenants contained in Section 9 of the Employment Agreement dated May 15, 2024 between Plaintiff and Defendant (the "Employment Agreement"), including but not being limited to Section 9(b)(the "Covenant Not to Compete"), Section 9(c)(the "Covenant Not to Solicit, accept, or divert Customers"), and Section 9(d)(the "Covenant Not to Solicit Employees").
B. Compelling Defendant to remit and return all personal property belonging to Plaintiff in its possession or control or in the possession and control of its employees, officers, agents, or representatives, including such items as were on the premises, whether in Plaintiff's desk in his office or elsewhere at the Office; and
C. Granting such other and further relief as this Court deems just and proper.

_____

Vivek J. Thiagarajan, Esq.

Attorney for Plaintiff