UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | | |
| JOHN SICILIANO JR., | : | |
| Plaintiff, | : | Case No. 6:25-cv-06307-EAW |
| – against – | : | |
| IMPERIAL BAG AND PAPER CO. LLC D/B/A IMPERIAL DADE, and BCPE EMPIRE NEW TOPCO, INC. | : | |
| Defendants. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE SEEKING A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

*Vivek J. Thiagarajan, Esq.*

*Attorney for Plaintiff*

*1088 Bay Road, Webster, NY 14580*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………...(iii)

PRELIMINARY STATEMENT……………………………………………………………..(1)

STATEMENT OF RELEVANT FACTS………………………………………….…(1)

### ARGUMENT

I.  DEFENDANTS' OPPOSITION IS PRIMA FACIE DEFICIENT AND WITHOUT MERIT……………………………………………………………………(2)

    A.  Defendants' singular document—a memorandum of law—is nothing more than a lengthy set of conclusory allegations that are insufficient to refute actual facts supported by a Declaration and actual documentary evidence……….……...…....(2)

    B.  Defendants' attempts to conflate jurisdiction with venue are without merit, and Plaintiff may submit himself to a Court's jurisdiction without conceding that it is the proper venue….…………………………………………….…...…(3)

II.  PLAINTIFF HAS MET HIS BURDEN ON EACH OF THE ELEMENTS FOR TEMPORARY INJUNCTIVE RELIEF, AND DEFENDANTS' OPPOSITION IS INSUFFICIENT TO DISPUTE THE SUBSTANCE OF SUCH CLAIMS………(5)

    A.  Plaintiff does not dispute or oppose the element of public interest alleged by the Plaintiff, and thus it is deemed admitted………………………….………(5)

    B.  Plaintiff has shown irreparable harm—including financial and reputational—and Defendants cannot leverage their own dilatory tactics to dispute that such harm exists………………………………………………………(6)

    C.  Plaintiff is likely to succeed in showing that the noncompete is unreasonable and unenforceable…………………………….………………………………...….(9)

    D.  Plaintiff is likely to succeed in showing that Plaintiff was wrongfully terminated…………………………………….……………………...……(12)

    E.  Defendants do not deny that the company is in possession of the ledger, and thus Plaintiff is likely to succeed in this claim…………………………………(13)

    F.  The balance of equities clearly favors Plaintiff, a terminated private employee from a local company, over Defendants, which are large national companies……………………………………………………....…(14)

CONCLUSION……………………………………………………...…..…(16)

## <u>TABLE OF AUTHORITIES</u>

*Amoco Production Co. v. Gambell, 480 U.S. 531 (1987)* …………………………………………..(5)

*Aon Risk Servs., Ne., Inc. v. Cusack*, 34 Misc.3d 1205(A), 2011 WL 6955890, *17 (Sup. Ct. N.Y. Cnty. Dec. 20, 2011)*……………………………………………………………………………(15)

*BDO Seidman v. Hirshberg, 93 N.Y.2d 382 (1999)* …………………………………………..(11)

*Biosafe-One, Inc. v. Hawks, 524 F. Supp. 2d 452 (S.D.N.Y. 2007)* …………………………..(7)

*Campagna v. New York City Police Department, 231 A.D.3d 531 (1st Dep't 2024)* ……………(3)

*Cartier v. Lussier, 955 F.2d 841 (2d Cir. 1992)* …………………………………………..(2)

*Citibank, N.A. v. Citytrust, 756 F.2d 273 (2d Cir. 1985)* …………………………………..(8)

*Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43 (2006)* ………………………….....(13)

*Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366 (SDNY 2009)* ……………………..(3,4,5)

*Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168 (2d Cir. 2000)* …...........................………(11)

*Girard v. Hickey, No. 9:15-CV-0187, 2016 WL 915253 (N.D.N.Y. Mar. 4, 2016)*…………………(9)

*Hyde v. KLS Prof'l Advisors Grp, LLC, 500 Fed. App'x 24 (2d Cir. 2012)* ………………………(9)

*In Re Kelley, 163 BR 27 (EDNY 1993)* ………………………………………………………..(2)

*Innovative Networks v. Satellite Airlines Ticketing Ctrs., 871 F. Supp. 709 (S.D.N.Y. 1995)*…….(12)

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc., 965 F.2d 1224 (2d Cir. 1992)* ………………………………………………………………………………..(8)

*Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326 (S.D.N.Y. 2018)* …………..(15)

*Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 NY2d 84 (1979)……………………(2)

*Sampson v. Murray, 415 U.S. 61 (1974)* …………………………………………………..(8)

*Tough Traveler v. Outbound Prods., 60 F.3d 964 (2d Cir. 1995)* …………………………………(8)

*United States v. Quattrone, 402 F.3d 304 (2d Cir. 2005)* ………………………………………(15)

*Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982)* ……………………….............…………(5)

*Willis of New York v. Defelice*, 299 AD2d 240 (2002)…………………………………….(10)

*Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)* …………………………(5)

*Wm. H. Wise & Co. v. Rand McNally & Co., 195 F. Supp. 621 (S.D.N.Y. 1961)* ……………...(11)

## PRELIMINARY STATEMENT

Pursuant to this Court's Text Order dated July 26, 2025, Plaintiff properly replead the relief originally sought in State Court. Defendants have completely failed to provide any factual opposition, sworn statements from company representatives, documentary evidence, or any other admissible evidence whatsoever to rebut Plaintiff's well-supported factual allegations and documentary evidence, thereby effectively conceding the factual basis of Plaintiff's claims. Given Defendants' failure to factually contest Plaintiff's claims, the requested relief must be granted as a matter of law.

Additionally, Plaintiff has met his burden on showing that he is likely to succeed on each of his claims, that he will be irreparably harmed absent such temporary relief, that the equities balance in his favor, and that public interest dictates the awarding of such relief. Regarding the noncompete, Plaintiff is in packaging, which does not involve specialized or proprietary products, and Defendants have not brought any affirmative proof that enforcement of the noncompete would harm their business. They have in fact raised no factual questions at all as to the allegations made by Plaintiff.

As such, both in substance and form, the Defendants' opposition is without merit and is insufficient to contest Plaintiff's prayer for relief, and thus it should be granted in full.

## STATEMENT OF FACTS

The relevant facts supporting Plaintiff's application are set forth in detail in the Declaration of the Plaintiff filed with his original motion papers. Defendants have failed to rebut any of the factual allegations with admissible evidence, and such facts should be deemed admitted.

In fact, the only declaration or statement from a representative of either Defendant in this entire action (none have been filed on this motion) is a brief, nine-paragraph declaration in support of its notice of removal, which alleges a short company history and where the headquarters is located. Defendants have provided no rebutting facts, documents, declarations, or other admissible evidence

1

opposing the Plaintiff's Declaration and documentary evidence. Therefore, pursuant to well-established legal principles, all factual statements in Plaintiff's Declaration must be deemed uncontroverted as a matter of law for purposes of this motion, and no additional factual showing is required or necessary for the Court to grant the requested relief.

## I.  DEFENDANTS' OPPOSITION IS PRIMA FACIE DEFICIENT AND WITHOUT MERIT

### A.  Defendants' singular document—a memorandum of law—is nothing more than a lengthy set of conclusory allegations that are insufficient to refute actual facts supported by a Declaration and actual documentary evidence.

Plaintiff raised factual issues on this instant Order to Show Cause, which were supported by a Declaration of facts by Plaintiff, as well as documentary evidence. Defendants have brought nothing on this opposition to dispute such facts except a Memorandum of Law, which has no factual weight whatsoever. In fact, the record on this motion contains not one single Declaration, sworn statement, or piece of documentary evidence from a representative of the Defendants.

In other cases, Courts will heavily favor uncontroverted statements that have not been disputed by affidavits or other evidence. In *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 NY2d 84 (1979), the Court of Appeals reviewed a case where employees filed suit alleging their pension rights had been revoked because they had begun working for a competitor in alleged violation of a noncompete after they were terminated, and the company's failure to controvert the employees' allegations regarding the nature of their termination was a factor the Court weighed in granting the employees' relief. See Also *In Re Kelley*, 163 BR 27 (EDNY 1993)("Although factual allegations supported by affidavits or other evidence made by the party opposing the motion must be regarded as true and viewed in the light most favorable to the non-movant, *Cartier v. Lussier,* 955 F.2d 841 (2d Cir. 1992), the Court concludes that the Debtors have not set forth any

specific facts that controvert First Federal's contentions. Accordingly, pursuant to Fed.R.Civ.P. 56(e) and Local Rule 22(b), the Court finds that the Bank's facts as presented in support of their motion are uncontroverted.").

Defendants have not controverted—by statement, declaration, or document made or provided by the actual party. By Defendants' own cited case law, their opposition should be given no weight. See Defendants' Memorandum of Law in Opposition, Page 10 (footnote)("Plaintiff's [sic] does not present any evidence that he was discharged without "Cause" aside from his own conclusory assertion. See *Campagna v. New York City Police Department*, 231 A.D.3d 531, 532 (1st Dep't 2024) (conclusory statements lacking are insufficient to satisfy the movant's evidentiary burden on a motion seeking a preliminary injunction).").

As such, this Order to Show Cause should be deemed—as to the facts of the matter—unopposed.

### B. Defendants' attempts to conflate jurisdiction with venue are without merit, and Plaintiff may submit himself to a Court's jurisdiction without conceding that it is the proper venue.

Defendants erroneously allege in their opposition that Plaintiff's motions are "procedurally inconsistent" because this motion "requires Plaintiff to submit himself to the jurisdiction of this Court, which Plaintiff's motion to remand contests in the first instance. Defendants misapprehend and seem to conflate the concepts of jurisdiction and venue.

As established by well-settled New York law and previously explained to Defendants, submission to jurisdiction and venue are distinct legal concepts. A party's submission to a court's jurisdiction for the purpose of contesting venue is a fundamental principle of civil procedure and does not constitute waiver of venue objections. See *Dornoch Ltd. v. PBM Holdings, Inc.*, 666

F.Supp. 2d 366 (SDNY 2009). To hold otherwise would create a result where parties could never challenge improper venue without forfeiting their rights.

Neither did Plaintiff agree to exclusive venue here, as there are actually two separate relevant contract provisions, the first of which is submission to jurisdiction (or a "service of suit" clause), and the second of which is related to venue (the "Forum Selection" Clause). Just as Defendants sought to conflate the two in their opposition to the separate motion, Defendants seek to conflate jurisdiction and venue again here. Regarding submission to jurisdiction, the agreement states:

> "TO THE EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS AND CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR, IF SUCH COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, ANY NEW YORK STATE COURT LOCATED IN THE COUNTY WHERE EMPLOYEE WAS EMPLOYED AT THE TERMINATION OF EMPLOYEE'S EMPLOYMENT AND, IN EACH CASE, THE APPELLATE COURTS THEREFROM, OVER ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT BY ANY PARTY ARISING OUT OF OR RELATING TO THIS AGREEMENT…"

The relevant provision which addresses forum selection states that each party "AGREES THAT ALL CLAIMS WITH RESPECT TO ANY SUCH SUIT, ACTION, OR OTHER PROCEEDING SHALL BE HEARD AND DETERMINED BY ANY SUCH COURT." Here, "any such Court" refers to Courts within the State of New York. It is well established law—both under New York Law and affirmed by Federal Courts—that jurisdiction and venue are separate legal frameworks and that a service of suit clause (which addresses submission to jurisdiction) does not bind a party to an admission of proper venue or forum. See *Dornoch Ltd. Ex re.*

*Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F.Supp. 2d 366 (SDNY 2009).

As such, Plaintiff's motions are not inconsistent, and this argument is without merit.

## II.  PLAINTIFF HAS MET HIS BURDEN ON EACH OF THE ELEMENTS FOR TEMPORARY INJUNCTIVE RELIEF, AND DEFENDANTS' OPPOSITION IS INSUFFICIENT TO DISPUTE THE SUBSTANCE OF SUCH CLAIMS.

### A.  Defendants do not dispute or oppose the element of public interest alleged by the Plaintiff, and thus it is deemed admitted.

As addressed in Plaintiff's initial moving papers, there are four factors by which a court may grant a preliminary injunction, Specifically, the movant must establish each of the four factors, namely irreparable harm, a likelihood of success on the merits, balancing of the equities, and consideration of the public interest. See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)(An injunction must be "in the public interest"); citing to *Amoco Production Co. v. Gambell*, 480 U. S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U. S. 305, 311–312 (1982).

It is Plaintiff's position, supported by substantial evidence and declarations, that he has made the requisite showing on each of these four factors. However, the Defendants reference public interest once as a pairing with the balancing of equities, but only ever address the balancing of equities "with respect to the former" but never finish the thought by addressing the latter. See Defendants' Memorandum of Law, Pg. 14. Defendants thus have not objected to or disputed the allegation that the public interest would be served by the requested relief being granted, this issue is unopposed and should be deemed admitted.

**B. Plaintiff has shown irreparable harm—including financial and reputational— and Defendants cannot leverage their own dilatory tactics to dispute that such harm exists.**

Defendants—without providing any factual support or statements from representatives of the companies—allege that Plaintiff has failed to "present any evidence of job offers that Plaintiff has had to decline as a result of the restrictive covenants." See Defendants' Memorandum of Law, Pg. 6. Defendants also argue that Plaintiff's alleged delay in repleading this relief undercuts the harm he alleges. Both of these arguments are disingenuous and seek to leverage the Defendants' own dilatory actions in attempting to avoid addressing the substance of Plaintiff's claims.

First, Defendants' argument regarding lack of job offers is both legally and logically flawed, as it attempts to use their own threatening conduct to create a defense. Under New York law, a party cannot benefit from their own wrongful conduct that prevents the very evidence they then claim is lacking. Plaintiff would remind the Defendants—and this Court—that on May 21, 2025, Defendants sent Plaintiff a letter "to remind" him of his noncompete. See Exhibit C of the Siciliano Declaration filed with the initial papers. Such letter threatens monetary and injunctive relief, as well as attorneys' fees, caused by "any breach of the Agreement" which includes both direct and indirect conduct. Defendants' circular argument that Plaintiff cannot show harm without proof of rejected job offers is legally deficient, as it ignores that their own threatening conduct and overbroad noncompete actively prevents Plaintiff from even seeking such employment opportunities without risking immediate legal action and substantial monetary penalties. The May 21, 2025 letter explicitly threatens monetary penalties and injunctive relief for "any breach," creating an immediate and concrete chilling effect that effectively prevents Plaintiff from pursuing any alternative employment opportunities without facing the risk of immediate legal action and

substantial monetary penalties. This argument is without merit and Plaintiff has shown irreparable harm to his finances from the loss of his job and his inability to acquire another.

Furthermore, any suggestion of delay is entirely attributable to Defendants' tactical removal of this matter on the eve of the State Court motion date; a procedural maneuver that New York courts have repeatedly recognized cannot be used to prejudice a plaintiff's substantive rights or create artificial defenses to preliminary relief. Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, "after removal, repleading is unnecessary unless the Court orders it." The Court did not order the Plaintiff to replead this Order to Show Cause until July 26, 2025, and Plaintiff shortly thereafter re-filed the Order to Show Cause on July 29, 2025.

Defendants argue that Plaintiff seeks to alter the status quo, not preserve it, but it was Defendants' actions that have altered the status quo by wrongfully terminating Plaintiff, withholding his benefits, preventing him from working, converting his valuable personal property, and now defaming him. In the Defendants' own word, on this motion, "the focus is on preserving, not altering, the status quo." See Defendants' Memorandum of Law, Pg. 2. Plaintiff seeks to do just that.

Defendants' multitude of case law on this question is entirely uncompelling and fails to raise a dispute as to the arguments made on the initial filing. *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 461 (S.D.N.Y. 2007) is cited by the Defendants to argue that irreparable injury is only an appropriate finding where it would be "difficult or impossible to return the parties to the positions they previously occupied" but in that case there were two injunctions, one which the Court denied and the other which the Court granted. Also, in that case, the dispute related to proprietary, high-level, specialized septic cleaning products, here Plaintiff's work involves putting

7

cardboard and other wrapping paper around other items and selling them. His work is neither specialized nor proprietary.

*Tough Traveler v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995) is cited by the Defendants to argue that preliminary injunctive relief is a "harsh remedy" but that case—where the Court denied the relief—involved a dispute over commercial products and product recognition, not a private citizen who has been denied employment and benefits and has been subject to reputational damage. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) is cited by the Defendants to argue that preliminary injunctive relief is a "harsh remedy" but such Court affirmed a lower Court ruling that <u>granted</u> injunctive relief in the underlying labor dispute. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275, 277 (2d Cir. 1985) is cited by the Defendants to argue that irreparable harm is the most important factor for the Court to consider, however such case involves a dispute between two large banks, which is hardly relevant to this case, where Plaintiff was wrongfully terminated, denied employment and benefits, and prevented the opportunity to work.

*Sampson v. Murray*, 415 U.S. 61, 92 (1974) is also cited by the Defendants to argue that "loss of income . . . falls far short of the type of irreparable harm which is a necessary predicate to the issuance of a temporary injunction in this type of case." This simplistic reduction of Plaintiff's claims to nothing more than a loss of immediate income is telling of the Defendants' imbalance of power. Plaintiff has conclusively demonstrated through sworn declarations and documentary evidence that he faces severe and continuing irreparable harm, including damage to his professional reputation, loss of industry connections, threatened financial stability, potential inability to meet court-ordered child support obligations, and deprivation of valuable property - harms that New York courts have consistently recognized as irreparable and warranting injunctive

relief. *Hyde v Hyde v. KLS Prof'l Advisors Grp, LLC*, 500 Fed. App'x 24, 26 (2d Cir. 2012) is similarly cited by the Defendants to argue that "difficulty in obtaining a job is undoubtedly an injury, but it is not an irreparable one." Plaintiff is not dealing with difficulty finding a job, he is being blocked from acquiring one by the Defendants themselves. *Girard v. Hickey*, No. 9:15-CV-0187, 2016 WL 915253, at *7 (N.D.N.Y. Mar. 4, 2016) is cited by Defendants to argue that evidence of irreparable harm must be in "admissible form" (which Plaintiff has provided), and the Defendants' use of this case only further supports the fact that Defendants' use of a singular Memorandum of Law should be given little weight in light of Plaintiff's factual allegations.

Defendants' arguments do not compellingly rebut those made by the Plaintiff, and as there are no facts raised in opposition—through declarations or documentary evidence—Plaintiff has met his burden in showing irreparable harm and injunctive relief should be granted.

### C.  Plaintiff is likely to succeed in showing that the noncompete is unreasonable and unenforceable.

Plaintiff made a factual showing as to the unreasonable nature of the noncompete and its direct effects on his livelihood. Defendants do not provide opposing facts which would rebut such claims, and thus—on the facts—Plaintiff's showing of likelihood of success is unopposed. On the legal questions related to likelihood of success, Plaintiff has likewise made a compelling case, and Defendants' arguments to the contrary are uncompelling.

Initially, as Defendants have not controverted the factual statements made by Plaintiff, which include the fact that he was terminated without cause, rather than for cause, New York Law precludes the enforcement of the noncompete. In *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 NY2d 84 (1979), the Court of Appeals reviewed a case where employees filed suit stating that they had been fired without cause and that thus the noncompete should not apply. The

Court of Appeals there stated, explicitly, that "impelled as we are then by that powerfully articulated congressional policy, and confronted with no decisions which command a contrary result, we now conclude that our own policies—those in favor of permitting individuals to work where and for whom they please, and against forfeiture—preclude the enforcement of a forfeiture-for-competition clause where the termination of employment is involuntary and without cause." The Court of Appeals further stated that enforcement against the employees would be "unconscionable."

In *Willis of New York v. Defelice*, 299 AD2d 240 (2002), the Court reviewed a case where an employer sought to enjoin multiple employees using a noncompete. There, while the Court upheld the noncompete against certain of the employees who were high-level individuals with access to proprietary information, they specifically refused to enforce the noncompete against one of the individuals, insofar as he was allowed to solicit his own clients who were loyal to him. The Court stated "since the record discloses that many of Defelice's clients are loyal to him personally, and not to the firm at which he works, he should not be enjoined from soliciting the clients he originally brought with him to plaintiffs, or related accounts." Here, Defendants' opposition does not dispute that Plaintiff had pre-existing clientele from the acquisition of 3G Packaging, and thus the noncompete cannot be enforced in this regard either.

As expressed previously, Plaintiff's services were also not unique or specialized, as he was selling packaging. Even if the Court found that the packaging was specialized and proprietary, the Court should still determine that Plaintiff can have access to soliciting his own clientele that he brought to Defendants through 3G Packaging. Defendants have not brought any affirmative proof that enforcement of the noncompete would harm their business or that Plaintiff is in a highly-specialized role with access to confidential and proprietary information, nor have they stated that

10

Defendants provided Plaintiff with clientele or specialized training. Each of these things should be present for this Court to endorse the noncompete, and Defendants have affirmed none of them. They have in fact raised no factual questions at all as to the allegations made by Plaintiff regarding his role, his clients, and the harm that his competition would cause. As such, Plaintiff's statements in this regard are uncontroverted.

Defendants cite to *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999) to argue that "the restraint is only reasonable if the noncompete agreement "(1) is no greater than is required for the legitimate interest of the employer, (2) does not impose undue hardship on the employee and (3) is not 'injurious to the public.'" Defendants go on to argue that "Plaintiff's role as Branch Manager of the 3G Packaging Division involved direct relationships with customers and access to substantial confidential information, making it critical to Defendants' ongoing business operations to enforce the restrictive covenants under *BDO*'s reasoning." See Defendants' Memorandum of Law, Pg. 9. Defendants' complete failure to provide any sworn statements from company representatives or concrete evidence demonstrating their legitimate business interests constitutes a fatal deficiency in their opposition, as they bear the affirmative burden under BDO Seidman to prove both the reasonableness and necessity of the restrictive covenant through competent evidence. This complete absence of evidence is particularly telling given Defendants' unique access to and control over any such proof of their purported business interests. This fatally undermines their position under BDO Seidman's requirements. Without such evidence, Defendants cannot meet their burden to show the noncompete is reasonably necessary to protect their business interests.

Defendants also cite other cases which are uncompelling. *Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)* is cited by the Defendants to allege that Plaintiff

11

must show a "sufficiently serious question going to the merits" but that case involved large companies squabbling over a business name dispute, not a private citizen who has been wrongfully denied employment and benefits, and who continues to suffer severe and irreparable reputational and financial harm. *Innovative Networks v. Satellite Airlines Ticketing Ctrs*., 871 F. Supp. 709, 728 (S.D.N.Y. 1995) is cited by the Defendants as an example of a noncompete agreement without geographical limits which the Court enforced, but Defendants neglect to mention that in that case, the individual against whom enforcement was sought took crucial, confidential documents with him when he left. Defendants have made no such allegations about Plaintiff, nor provided any facts as to the reasoning for the geographical scope of the noncompete. Here, the documents and sensitive information was Plaintiff's to begin with, as he worked with 3G Packaging before it was acquired.

As such, Defendants' arguments do not compellingly rebut those made by the Plaintiff, and as there are no facts raised in opposition—through declarations or documentary evidence—Plaintiff has met his burden in showing a likelihood of success and injunctive relief should be granted.

**D.  Plaintiff is likely to succeed in showing that Plaintiff was wrongfully terminated.**

Plaintiff has made a compelling and well-documented factual showing demonstrating his wrongful termination. Despite having ample opportunity to do so, Defendants have failed to provide any opposing facts or evidence to rebut these claims, thereby effectively conceding—on the facts—Plaintiff's strong showing of likelihood of success. On the legal questions related to likelihood of success, Plaintiff has likewise made a compelling case regarding his termination, and Defendants' arguments to the contrary are uncompelling.

Defendants' sole legal argument as to the insufficiency of proof regarding Plaintiff's wrongful termination is that he "does not present any evidence that he was discharged without "Cause" aside from his own conclusory assertion." <u>See</u> Defendants' Memorandum of Law, Pg. 10 (footnote). Plaintiff submitted a ten (10) page supporting declaration with multiple exhibits. Defendants brought nothing to oppose these facts and documents. As such, Defendants' argument that it was Plaintiff—not Defendants—who made conclusory statements is disingenuous, at best, and fatal to their opposition, at worst.

As such, Defendants' arguments do not compellingly rebut those made by the Plaintiff, and as there are no facts raised in opposition—through declarations or documentary evidence—Plaintiff has met his burden in showing a likelihood of success and injunctive relief should be granted.

### E.  Defendants do not deny that the company is in possession of the ledger, and thus Plaintiff is likely to succeed in this claim.

Plaintiff made a factual showing as to the conversion of his property. Defendants do not provide opposing facts which would rebut such claims, and thus—on the facts—Plaintiff's showing of likelihood of success in this regard is unopposed. On the legal questions related to likelihood of success, Plaintiff has likewise made a compelling case regarding his ledger, and Defendants' arguments to the contrary are uncompelling.

Defendants argue that to show likelihood of success on his conversion claim, Plaintiff must show "(1) legal ownership or an immediate superior right of possession to identifiable personal property, and (2) defendant exercised unauthorized dominion over the property to the exclusion of plaintiff's rights. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006); *accord*, *Wm. H. Wise & Co. v. Rand McNally & Co.*, 195 F. Supp. 621 (S.D.N.Y. 1961)." <u>See</u> Defendants'

Memorandum of Law, Pg. 13. Here, Plaintiff has conclusively established both his possession and superior right to such property, and has demonstrated that Defendants continue to wrongfully retain possession of it—a critical fact that Defendants have tellingly failed to deny or even address in their memorandum of law, which under New York law constitutes a tacit admission.

As such, Defendants' arguments do not compellingly rebut those made by the Plaintiff, and as there are no facts raised in opposition—through declarations or documentary evidence—Plaintiff has met his burden in showing a likelihood of success and injunctive relief should be granted.

### F. The balance of equities clearly favors Plaintiff, a terminated private employee from a local company, over Defendants, which are large national companies.

Plaintiff made a factual showing as to the balancing of equities related to his vulnerable position as a private citizen who cannot work. Defendants do not provide opposing facts which would rebut such claims, and thus—on the facts—Plaintiff's showing of likelihood of success in this regard is unopposed. On the legal questions related to likelihood of success, Plaintiff has likewise made a compelling case regarding the equities, and Defendants' arguments to the contrary are uncompelling.

Defendants argue that "the prohibition on working, providing services or having any position as principal, director, employee, agent, distributor, representative, equity holder or otherwise, will not cause "great hardship" for Plaintiff given that it is temporary." See Defendants' Memorandum of Law, Pg. 13. The Defendants' dismissive characterization of a year-long prohibition on employment as merely "temporary" hardship demonstrates the unconscionable power imbalance between multibillion dollar corporate entities and an individual person with ongoing financial obligations, including court-ordered child support payments especially given

14

that Plaintiff cannot afford to forgo employment for a full calendar year—without any benefits, unemployment insurance, or other means to mitigate his financial obligations, which would cause immediate and irreparable harm to Plaintiff and his family. This is particularly egregious given Plaintiff's ongoing child support obligations and the fact that New York courts have consistently held that preventing an individual from earning a living constitutes irreparable harm.

*Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 354 (S.D.N.Y. 2018) and *Aon Risk Servs., Ne., Inc. v. Cusack*, 34 Misc.3d 1205(A), 2011 WL 6955890, *17 (Sup. Ct. N.Y. Cnty. Dec. 20, 2011) are cited by the Defendants to make the argument that the balancing of equities typically favor employers when it comes to restrictive covenants. Such cases are completely inapplicable here as they involve employers actively seeking to enforce restrictive covenants through proper procedural channels, unlike Defendants who have taken extrajudicial actions to harm Plaintiff while failing to properly seek covenant enforcement through the courts.

Plaintiff also raised issues regarding the fact that now Defendants—two large companies—have allegedly been defaming Plaintiff through its representatives, tying him to a sexual harassment claim which is harming his reputation. *United States v. Quattrone, 402 F3d. 304, 309-10 (2d Cir. 2005)* is cited by the Defendants to argue that Plaintiff's request for a nondisparagement order in this regard is a "prior restraint on speech" but has provided no statements from its representatives to show that such speech is not already happening, and Plaintiff provided a declaration stating that such speech was already occurring and causing harm.

As such, Defendants' arguments do not compellingly rebut those made by the Plaintiff, and as there are no facts raised in opposition—through declarations or documentary evidence—Plaintiff has met his burden in showing a likelihood of success and injunctive relief should be granted.

15

## **CONCLUSION**

Considering the foregoing, this Court should grant the Plaintiff's requests for preliminary injunctive relief as follows:

A. Immediately and permanently restraining, enjoining, and prohibiting Defendant from enforcing the restrictive covenants contained in Section 9 of the Employment Agreement dated May 15, 2024 between Plaintiff and Defendant (the "Employment Agreement"), including but not being limited to Section 9(b)(the "Covenant Not to Compete"), Section 9(c)(the "Covenant Not to Solicit, accept, or divert Customers"), and Section 9(d)(the "Covenant Not to Solicit Employees").

B. Compelling Defendant to immediately remit and return all personal property belonging to Plaintiff in its possession or control or in the possession and control of its employees, officers, agents, or representatives, including but not limited to items in Plaintiff's desk, office, or elsewhere at the Office, within 48 hours of the Court's order, and to provide a sworn certification that all such property has been returned;

C. Enjoining Defendants and their representatives from disparaging Plaintiff; and

D. Granting such other and further relief as this Court deems just and proper.


_____s/_____

Vivek J. Thiagarajan, Esq.

Attorney for Plaintiff

1088 Bay Road,

Webster, NY 14580