UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN SICILIANO, JR.,

                Plaintiff,                      **DECISION AND ORDER**

        v.                            6:25-CV-06307 EAW

IMPERIAL BAG AND PAPER CO. LLC
d/b/a IMPERIAL DADE, and BCPE EMPIRE
NEW TOPCO, INC.,

                Defendants.
_____

## <u>INTRODUCTION</u>

Plaintiff John Siciliano, Jr. ("Plaintiff"), commenced this action in New York State Supreme Court, Monroe County (Dkt. 2-1), and on June 12, 2025, defendants Imperial Bag and Paper Co. LLC d/b/a Imperial Dade ("Imperial Dade") and BCPE Empire New Topco, Inc. ("Empire") (collectively "Defendants") removed the action to federal court. (Dkt. 1). Presently before the Court are Defendants' motion to transfer venue to the Southern District of New York (Dkt. 3), Plaintiff's motion to remand to state court (Dkt. 6), and Plaintiff's motion for a temporary restraining order (Dkt. 13). For the reasons discussed below, Plaintiff's motion to remand is denied, Defendants' motion to transfer is granted, and this matter is transferred to the Southern District of New York, which can address Plaintiff's motion for a temporary restraining order.

# BACKGROUND

## I.    Factual Background[1]

Plaintiff was formerly employed by Imperial Dade in Rochester, New York.  (Dkt. 2-1 at ¶ 1).  Empire is Imperial Dade's majority owner and the two entities, connected by ownership interest, are considered to be one for liability purposes.  (*Id.* at ¶¶ 2-4).

On May 14, 2024, Plaintiff and Imperial Dade signed an employment agreement ("Agreement") that contained the terms and conditions of Plaintiff's employment with Imperial Dade.  (*Id.* at ¶ 7).  Plaintiff reviewed the Agreement with counsel before signing and understood that it provided him with certain rights concerning severance and termination, and limitations as to the noncompete provisions.  (*Id.* at ¶ 8).

Plaintiff was employed at Imperial Dade for about one year without incident.  (*Id.* at ¶ 9).  But Oscar Garcia, Imperial Dade's Northeast Manager at the time, disliked Plaintiff and manufactured a pretext to terminate Plaintiff's employment in order to allow Defendants to avoid paying severance and other benefits.  (*Id.* at ¶¶ 10, 11).  On May 21, 2025, Plaintiff was terminated for alleged misconduct, which was false and unsubstantiated, and contrary to the definitions of "cause" set forth in the Agreement.  (*Id.* at ¶¶ 12, 13).

As a result of the termination, Plaintiff was not permitted to clean out his desk or remove his personal items, which included insulin equipment and a valuable

---

[1]    The following facts are taken from the complaint, notice of removal, and from the parties' papers submitted in support of and in opposition to the motion for transfer of venue and motion to remand.

cryptocurrency ledger containing approximately $400,000 in cryptocurrency. (*Id.* at ¶ 14). Although the Northeast Manager promised to send Plaintiff's personal items to him, when Plaintiff received the items, he discovered that the cryptocurrency ledger was not included. (*Id.* at ¶¶ 15, 16).

Before Plaintiff had even received a formal termination letter, he received a communication from Imperial Dade's Assistant General Counsel, reminding him of the terms of the Agreement and noncompete letter. (*Id.* at ¶ 17). On May 23, 2025, Plaintiff received a formal termination letter stating that the termination was due to misconduct and advising that his benefits would terminate immediately. (*Id.* at ¶ 20).

In his complaint, Plaintiff asserts a first cause of action for breach of the Agreement, alleging that his termination did not satisfy the cause requirements of the Agreement. (*Id.* at ¶ 35). He contends that because Defendants failed to properly allege or prove misconduct, his termination should have been deemed to be without cause, which would trigger the benefits Plaintiff was denied. (*Id.* at ¶ 38). Plaintiff's second cause of action is for wrongful termination and retaliation and alleges that he was retaliated against for reporting an issue involving other employees after a company party and terminated in a manner inconsistent with the contract between the parties. (*Id.* at ¶¶ 42, 48). The third cause of action is for declaratory judgment asking the Court to determine that Plaintiff's conduct did not meet the definition of cause in the Agreement or conform with Defendants' company code of conduct. (*Id.* at ¶ 56). And the fourth cause of action for conversion arises from Defendants' failure to return his cryptocurrency ledger. (*Id.* at ¶¶ 58, 59). Plaintiff seeks injunctive relief and attorneys' fees.

## II.    Procedural Background

Plaintiff filed his complaint on June 11, 2025, in New York State Supreme Court, Monroe County.  (Dkt. 2-1).  On June 12, 2025, Defendants removed the action to federal court based on diversity jurisdiction.  (Dkt. 1).  Shortly after filing the notice of removal, on June 20, 2025, Defendants filed the instant motion to transfer venue to the United States District Court for the Southern District of New York.  (Dkt. 3).  Defendants argue that transfer to the Southern District of New York is proper because of the forum selection clause contained in the Agreement.

On July 11, 2025, Plaintiff filed a cross-motion to remand the matter to state court and his opposition to Defendants' motion to transfer venue.  (Dkt. 6).  Plaintiff argues that remand is necessary because all parties are not diverse.  (Dkt. 6-3).

On July 17, 2025, Plaintiff filed a motion for default judgment.  (Dkt. 10).  He also filed a letter seeking clarification from the Court as to the status of an application filed in state court before removal.  (Dkt. 11).  On July 21, 2025, the Court denied the motion for default judgment on procedural and substantive grounds and advised that if Plaintiff seeks to pursue any relief sought in state court, he is required to file a motion in this proceeding supported by federal standards and caselaw.  (Dkt. 12).

Plaintiff filed a motion for a temporary restraining order on July 25, 2025.  (Dkt. 13).  On August 1, 2025, Defendants filed their opposition to Plaintiff's cross-motion to remand and reply in further support of transfer.  (Dkt. 15).  On August 8, 2025, Defendants filed their opposition to Plaintiff's motion for a temporary restraining order.  (Dkt. 16).  On

August 8, 2025, Plaintiff filed his reply to his cross-motion (Dkt. 17), and on August 15, 2025, he filed his reply to his motion for a temporary restraining order (Dkt. 18).

## DISCUSSION

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." *Callen v. Callen*, 827 F. Supp. 2d 214, 215 (S.D.N.Y. 2011) (citation modified); *Yale New Haven Health Servs. Corp. v. Prospect Med. Holdings, Inc.*, No. 3:25-CV-00105-MPS, 2025 WL 2048647, at *3 (D. Conn. July 22, 2025) ("In the context of competing motions for remand and transfer, courts typically exercise that leeway [to choose among threshold grounds] by considering the remand motion before the transfer motion." (citation modified)).  Accordingly, the Court first addresses Plaintiff's motion to remand.

## I.    Motion to Remand

A cause of action before a state court may be removed by the defendant if "the district courts of the United States have original jurisdiction[.]"  28 U.S.C. § 1441(a). "District courts have original jurisdiction over cases where a federal question exists and of certain cases involving complete diversity of citizenship." *Brice v. Costco Wholesale Corp.*, No. 1:23-CV-7857-GHW, 2024 WL 2783895, at *3 (S.D.N.Y. May 28, 2024).

"In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper." *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) (citing *Lupo v. Human Affairs Int'l, Inc.*,

28 F.3d 269 (2d Cir. 1994)); *Amcat Glob., Inc. v. Yonaty*, 192 F. Supp. 3d 308, 311 (N.D.N.Y. 2016) (ability to remove an action "is strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns" (citation modified)).  A court will "generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed." *Vera v. Saks & Co.*, 335 F.3d 109, 119 n.2 (2d Cir. 2003).

In resolving a motion to remand, the Court treats all facts alleged in the complaint as true.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001) ("A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a)." (citation modified)); *see also Deutsche Bank Nat'l Tr. Co. v. LeTennier*, No. 3:24-cv-00564 (BKS/ML), 2024 WL 3043429, at *1 (N.D.N.Y. June 18, 2024) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (citation modified)).  The Court may also consider documents outside the pleadings submitted in connection with a motion to remand.  *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("if subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings," including "documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis"); *see also Wachtell, Lipton, Rosen, & Katz v. CVR Energy, Inc.*, 18

F. Supp. 3d 414, 416 n.2 (S.D.N.Y. 2014) (relying on, in addition to the complaint, documents submitted in connection with removal and the motion to remand).

The statute governing diversity jurisdiction, 28 U.S.C. § 1332, permits federal jurisdiction for actions "'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)).  Diversity jurisdiction exists only 'when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants.'" *Barnes v. Fort Hamilton Fam. Homes*, 524 F. Supp. 3d 40, 42 (E.D.N.Y. 2021) (quoting *Lawrence v. HHC TRS FP Portfolio*, LLC, No. 20-cv-4843, 2020 WL 6273946, at *1 (E.D.N.Y. Oct. 26, 2020)); *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("'[C]itizens of different States' means that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant." (quoting 28 U.S.C. § 1332(a)(1))); *see also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show 'complete diversity'—that is, that it does not share citizenship with any defendant." (quoting *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)).

A corporation is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  "For diversity purposes, a corporation's 'principal place of business' is the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . . [and] should normally be the place where the corporation

maintains its headquarters—provided that the headquarters is the action center of direction, control, and coordination." *Jay Kripalani M.D. P.C. v. United Healthcare Grp.*, No. 24-CV-05671 (NJC) (JMW), 2025 WL 3461165, at *6 (E.D.N.Y. July 31, 2025) (citation modified). "In addition, for diversity purposes, a limited liability company (an 'LLC') is deemed to be a citizen of each State of which its members are citizens." *McClellon v. Lemonade Ins. Co.*, No. 1:24-CV-8617 (LTS), 2025 WL 3281437, at *3 (S.D.N.Y. Nov. 25, 2025).

In support of its notice of removal, Defendants submitted the declaration of Paul Cervino, the Chief Administrative Officer of Imperial Dade, who states that Empire is the parent company of Imperial Dade and is a citizen of Delaware and New Jersey. (Dkt. 2 at ¶ 2). He further attests that Imperial Dade is a limited liability company formed under the laws of the State of Delaware whose sole member is Imperial Bag & Paper Co. LLC. (*Id.* at ¶ 3). Imperial Bag & Paper Co. LLC is owned 100% directly by Imperial Dade Intermediate Holdings, LLC, and received a certificate documenting its formation as an LLC under the laws of the State of Delaware, and with its principal place of business in New Jersey. (*Id.*). Imperial Dade Intermediate Holdings, LLC, is owned 100% directly by AG IB&P Blocker, Inc., a Delaware corporation, which has its principal place of business in New Jersey. (*Id.*). Cervino also attests that both Empire and Imperial Dade "maintain their principal place of business in New Jersey, where their executive and administrative offices are located, and where the majority of its executive and administrative functions are performed." (*Id.* at ¶ 4).

Plaintiff argues that diversity is lacking because Imperial Dade "is a New York-licensed business entity with an office in New York and formal filing with the Department of State, making it a New York citizen for diversity purposes." (Dkt. 6-3 at 4-5). But the fact that an entity is licensed to do business in a state or has an office there does not equate to citizenship for diversity purposes.[2] *Trocchio v. Empanada Mama LLC*, No. 25-CV-5325 (VSB), 2025 WL 1827197, at *2 (S.D.N.Y. July 2, 2025) ("Merely alleging that [a corporation] maintains an address in New York is insufficient to show that the corporation's principal place of business in in New York."); *Lone Star Americas Acquisitions, Inc. v. SUSA Fin., Inc.*, No. 22-CV-8852 (JGK), 2023 WL 3738982, at *2 (S.D.N.Y. May 31, 2023) ("In this case, the only dispute with respect to the existence of complete diversity is whether Lone Star has its principal place of business in Texas (where the defendant is incorporated) or in New York. Whether a corporation has offices or does business in any given state is not controlling for this analysis."); *Vargas v. Holden*, No. 10 CIV. 8567 JGK, 2011 WL 446199, at *1 (S.D.N.Y. Feb. 8, 2011) ("[w]hether a corporation has offices or does business in any given state is not controlling" for a diversity analysis); *Vays v. Ryder Truck Rental, Inc.*, 240 F. Supp. 2d 263, 265 (S.D.N.Y. 2002) (rejecting argument that corporation was a citizen of New York because it accepts service through

---

[2]     The case Plaintiff identifies as one of his "key" cases regarding diversity jurisdiction (Dkt. 17 at 12-13) expressly holds as much, stating, "[c]learly, therefore, under the recognized criteria, the mere fact that a foreign corporation has a place of business in a State where it is qualified to do business is not sufficient to make that location its principal place of business" for diversity purposes. *Wear-Ever Aluminum, Inc. v. Sipos*, 184 F. Supp. 364, 366 (S.D.N.Y. 1960).

the Secretary of State, maintains numerous offices in state, and transacts substantial business there).  And Plaintiff's own submission includes evidence that the New York Department of State's Division of Corporations lists Imperial Dade as a "foreign limited liability company" incorporated in Delaware.  (Dkt. 6-2).

Thus, Defendants have established that each corporate defendant is a citizen of a state other than New York.  And Plaintiff is a citizen of New York.  (*See* Dkt. 1 at ¶ 11). Because there is no dispute over the amount in controversy, Plaintiff's motion to remand for lack of subject matter jurisdiction is denied.

## II.    <u>Motion to Transfer</u>

Defendant moves to transfer this action to the Southern District of New York because of a forum selection clause contained in the Agreement.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Ordinarily on a motion to transfer venue, a court must consider a number of factors but the analysis changes when a forum selection clause is at issue.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013).

"Forum selection clauses are 'prima facie valid' and should be enforced unless demonstrated to be 'unreasonable' under the circumstances."  *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 359 (S.D.N.Y. 2014) (quoting *M/S Bremen et al. v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *see also New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ("A forum selection clause is enforceable unless

it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it.") (citation omitted); *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 801 F. Supp. 3d 217, 231 (S.D.N.Y. 2025) (noting "strong public policy of enforcing forum-selection clauses" (citation modified)). Accordingly, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. at 63 (citation modified). "The enforceability or validity of a forum selection clause is a matter of federal procedural law." *NEC Fin. Servs., LLC v. Health & Wellness Centerr LLC,* No. 24-CV-03978 (JS)(AYS), 2025 WL 2689700, at *3 (E.D.N.Y. Sept. 18, 2025) (quoting *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 372 (S.D.N.Y. 2002)).

"The Second Circuit has established a four-part analysis to determine whether a forum-selection clause is enforceable: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties involved in the suit are subject to the forum selection clause; and (4) if the first three inquiries are satisfied and the forum selection clause is presumptively enforceable, whether the resisting party has rebutted the presumption of enforceability." *ONEflight Int'l v. Stallion Aviation*, LLC, No. 24-CV-8381 (JGK) (HJR), 2025 WL 3239733, at *4 (S.D.N.Y. Nov. 20, 2025) (citing *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)), *report and recommendation adopted*, 2026 WL 67244 (S.D.N.Y. Jan. 8, 2026).

Applying this test directs a conclusion that the forum-selection clause in the Agreement is enforceable. The Agreement containing the forum selection clause was communicated to Plaintiff, as he acknowledges in his complaint that he reviewed the Agreement with counsel before entering into it and consenting to its terms. (Dkt. 2-1 at ¶ 7). Moreover, the language containing the forum selection clause is clearly marked in capital letters in the Agreement.

Next, the clause is mandatory. Courts consider whether the language in the forum selection clause is "permissive" or "mandatory." *Global Seafood Inc. v. Bantry Bay Mussels Ltd*., 659 F.3d 221, 225 (2d Cir. 2011). "A permissive forum selection clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate. . . . Mandatory forum selection clauses, on the other hand, require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." *Id*. (citation modified); *see also Phillips*, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."); *Meet Recruitment Inc. v. Neuro42, Inc.*, 786 F. Supp. 3d 856, 860 (S.D.N.Y. 2025) (forum selection clause stating that "the parties submit to the exclusive authority of the jurisdiction of the courts of the State of New York" "reflects obligatory venue language" and is considered mandatory); *ONEflight Int'l*, 2025 WL 3239733, at *4 ("The forum selection clause is therefore mandatory, as indicated by the use of words 'exclusive' and 'shall.'"); *Redhawk Holdings Corp. v. Craig Invs., LLC*, No. 15 CIV. 9127 (CM), 2016 WL 3636247, at *5 (S.D.N.Y. June 24, 2016) ("The [contract's] forum selection clause is

clearly mandatory.  The phrase 'shall be commenced exclusively' is a strong indication of

the clause's mandatory nature.").

Here, the Agreement states, in relevant part:

> TO THE EXTENT PERMITTED BY LAW, <u>EACH OF THE PARTIES
> HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS AND
> CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE UNITED
> STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW
> YORK</u> OR, IF SUCH COURT DOES NOT HAVE SUBJECT MATTER
> JURISDICTION, ANY NEW YORK STATE COURT LOCATED IN THE
> COUNTY WHERE EMPLOYEE WAS EMPLOYED AT THE
> TERMINATION OF EMPLOYEE'S EMPLOYMENT AND, IN EACH
> CASE, THE APPELLATE COURTS THEREFROM, OVER ANY SUIT,
> ACTION OR OTHER PROCEEDING BROUGHT BY ANY PARTY
> ARISING OUT OF OR RELATING TO THIS AGREEMENT, AND EACH
> OF THE PARTIES HEREBY IRREVOCABLY AND
> UNCONDITIONALLY (I) AGREES THAT ALL CLAIMS WITH
> RESPECT TO ANY SUCH SUIT, ACTION, OR OTHER PROCEEDING
> SHALL BE HEARD AND DETERMINED BY ANY SUCH COURT AND
> (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY
> OBJECTION THAT IT MAY HEREAFTER HAVE TO THE LAYING OF
> THE VENUE OF ANY SUCH SUIT, ACTION, OR OTHER
> PROCEEDING IN ANY SUCH COURT OR THAT ANY SUIT, ACTION,
> OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT HAS
> BEEN BROUGHT IN AN INCONVENIENT FORUM.  SERVICE OF
> PROCESS, SUMMONS, NOTICE, OR OTHER DOCUMENT BY MAIL
> TO SUCH PARTY'S ADDRESS SET FORTH IN SECTION 12 SHALL
> BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT, ACTION, OR
> OTHER PROCEEDING BROUGHT IN ANY SUCH COURT.  **THE
> PARTIES KNOWINGLY, VOLUNTARILY, INTENTIONALLY,
> AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY IN
> ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF
> OR RELATED TO THIS AGREEMENT, EMPLOYEE'S
> EMPLOYMENT WITH THE COMPANY, OR THE TERMINATION
> OF EMPLOYEE'S EMPLOYMENT WITH THE COMPANY.**

(*See* Dkt. 2-1at 32-33 ¶ 14(d) (emphasis added)).  Thus, the provision expressly dictates

that venue in the Southern District of New York is mandatory and *exclusive* so long as that

court has subject matter jurisdiction over the claims.  As explained above, the Southern

District undoubtedly has such jurisdiction given the complete diversity between the parties and the requisite amount in controversy. Plaintiff's attempts to suggest that the clause is permissive and that its later reference to "any such court" permits him to file an action in other jurisdictions is unreasonable. Plaintiff's interpretation would render the clear reference to the Southern District of New York in the forum selection clause meaningless.

In addition, the claims in Plaintiff's complaint are subject to the forum selection clause because they "aris[e] out of or relat[e] to" the Agreement. Although Plaintiff argues that his claims for wrongful termination and conversion of property fall outside the scope of the Agreement and are not encompassed by the forum selection clause, the Court disagrees. Here, the clause covers claims that arise out of *or relate to* the Agreement. (*See* Dkt. 2-1at 32-33 ¶ 14(d)). As the court in *Zama Cap. Advisors LP v. Universal Ent. Corp.*, No. 1:24-CV-01577-MKV, 2025 WL 968783 (S.D.N.Y. Mar. 31, 2025) recently stated, "[c]ourts have recognized that provisions ['arising out of or relating to'] are broad in scope," as "[t]he phrase 'related to' is generally broader than phrases 'arising out of.'" *Id.* at *10. "Courts have described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to.'" *Id.* (citation modified)). Thus, contrary to Plaintiff's position, the analysis is not merely whether any of the claims are expressly based in the contract, but whether they relate to it. The Court concludes that they do, as Plaintiff's discrimination claim and claim for conversion are factually and legally related to the circumstances of Plaintiff's employment termination. *Lahoud v. Document Techs. LLC*, No. 17-CV-1211 (PKC), 2017 WL 5466704, at *4 (S.D.N.Y. Nov. 14, 2017) ("Courts have concluded that

forum selection clauses covering legal actions 'arising' from or 'relating' to an employment agreement apply to discrimination and retaliation claims.").

Having found the first three factors in favor of enforcement, the Court considers whether the presumption of enforceability is rebutted. "Such presumption can be overcome: (1) if their incorporation into the agreement was the result of fraud or overreaching[;] (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum[;] (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.' *NEC Fin. Servs., LLC,* 2025 WL 2689700, at *4. None of these factors are present. While Plaintiff argues that enforcement of the forum selection clause would be unreasonable and unjust because "(1) neither party resides or has offices in the Southern District, (2) no events giving rise to any claims occurred there, (3) relevant witnesses and evidence are located in the Western District, and (4) litigating in the Southern District would impose substantial unnecessary costs and burdens on Plaintiff," (Dkt. 6-3 at 7), these reasons pertain to convenience and are matters waived by the parties in contracting for a forum selection clause. *Atl. Container Line AB v. Volvo Car Corp.*, No. 14-CV-1811 CM, 2014 WL 4730152, at *7 (S.D.N.Y. Sept. 22, 2014) ("To rebut the presumption, it is not enough to show that litigation in the chosen forum will be more difficult, expensive, or burdensome. Rather, the party challenging enforcement must demonstrate that it would be 'impossible' to litigate in the chosen forum, . . . or it would effectively deprive them of their day in court. Mere inconvenience and expense of travel are not, standing alone, adequate reasons to disturb

the parties' contractual choice of forum, because such matters presumably were contemplated by the parties when they entered into the contract." (citation modified)).

Accordingly, based on the forum selection clause and an assessment of the relevant factors, the case should be transferred to the Southern District of New York. Defendants' motion to transfer is granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for remand (Dkt. 6) is denied and Defendants' motion to transfer (Dkt. 3) is granted. The Clerk is directed to transfer this case to the Southern District of New York.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

DATED:    February 9, 2026
          Rochester, New York